**Edwin L. BARTON, Sr. and Alice Faye Hanks Barton**

v.

**GIFFORD–HILL & COMPANY, INC.**

**Civ. A. No. 88–2629.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

Jan. 16, 1991.

Dorwan G. Vizzier, Broussard, Bolton, Halcomb & Vizzier, Alexandria, La., for plaintiffs.

Ledoux R. Provosty Jr., Provosty, Sadler & Delaunay, Alexandria, La., Adams & Reese, Paul O. Dicharry, New Orleans, La., and Warren E. Byrd, II, Baton Rouge, La., for defendant.

Tudor & Savoie, Herman M. Savoie, Jr., Alexandria, La., for Empire Const. Co., Inc. and Harleton K. Stanley.

## RULING

LITTLE, District Judge.

Plaintiffs Edwin L. Barton and Alice F. Hanks are suing defendant Gifford–Hill & Co., Inc. for breach of contract. Plaintiffs leased a parcel of land in Rapides Parish, Louisiana to defendant, who was to mine it for sand and gravel and pay royalties to plaintiffs for all minerals removed and sold. Plaintiffs claim this contract was breached in two ways. First, plaintiffs allege that defendant had a duty to restore partially the land after its operations were concluded by sloping the sides of the gravel pit and repairing a damaged fence. Second, plaintiffs claim that defendant has not given them some of the royalties they were owed from the sale of the minerals.

On 30 August 1990 this court denied a motion for summary judgment filed by defendant. In that ruling the court determined there to be questions of material fact concerning both issues which precluded summary judgment. Defendant is now

asking the court to reconsider its initial decision.

■ The court is not convinced that its first determination was in error because there is a genuine question regarding whether plaintiffs are entitled to site restoration. Although the lease agreement between the parties does not contain any provision regarding site restoration, the Louisiana Mineral Code [1] states that a mineral lessee must operate leased property as a "reasonably prudent operator for the mutual benefit of himself and his lessor." La. Rev.Stat.Ann. 31:122 (West 1989). The comment to 31:122 states that:

> The cases treating the obligation of a mineral lessee to restore the surface of the lease premises as near as is practical to original condition do not specifically include this obligation under the general obligation to act as a prudent administrator. Rather, this obligation has a foundation in Articles 2719 and 2720 of the Civil Code. However, there appears no reason whatsoever to exclude this particular obligation as being a specification of the prudent administrator standard. It is established that the mineral lessee must restore the surface even though the lease contract is silent. There is apparently an economic balancing test which limits this duty.

(Citation omitted).

Defendant calls the court's attention to a hoary decision by the Louisiana Supreme Court which stated that "any operation on the land for sand or gravel would result in the utter destruction of its surface." *Holloway Gravel Co. v. McKowen*, 200 La. 917, 9 So.2d 228, 233 (1942). Defendant suggests that this dicta absolves it of any restoration duty. Nevertheless, the mere recognition that removal of sand or gravel will consume the surface of a tract does not indicate that the lessee can act in any manner inconsistent with prudent administration. Prudent administration would certainly not encompass a duty to restore perfectly a sand or gravel pit to its original condition, but conceivably it could require defendant to slope the sides of the pit or to repair damaged fences.

■ The court is, however, persuaded that its original ruling denying summary judgment on plaintiffs' royalty claims was in error. The contract between the parties calls for royalties to be paid on any minerals "removed and sold." During the mining operations, defendant removed a quantity of flume sand and placed it on an adjacent parcel of land owned by Roy O. Martin. Defendant later sold a nearby tract of land to Stanley Enterprises. Stanley began making sporadic sales of flume sand from the pile on Mr. Martin's property and forwarded royalty checks to plaintiffs. Both parties to the Stanley sale agree that the value of the sand on the Martin tract did not make up any part of the purchase price of the Stanley tract. See affidavit of H. Barrett; deposition of C. Miller, p. 74; deposition of H. Stanley, p. 17. The one indication that the waste flume sand may have formed part of the purchase price is the speculative testimony of E. Bryant. Nevertheless, it is well established that a mere scintilla of evidence will not defeat a motion for summary judgment; there must be sufficient evidence upon which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

Accordingly, because the court is convinced that one of its earlier rulings was incorrect, defendant's motion to reconsider is GRANTED IN PART. Defendant's motion for summary judgment is GRANTED with respect to plaintiffs' claims for lost royalties. An appropriate judgment shall issue.

---

**1.** The provisions of the Mineral Code encompass sand and gravel operations. La.Rev.Stat. Ann. 31:4 (West 1989) states that the Code covers "rights to explore for or mine or remove from land the soil itself, gravel, shells, subterranean water, or other substances occurring naturally in or as a part of the soil or geological formations on or underlying the land."